[Crim. No. 3802.    First Dist., Div. One.    July 20, 1961.]

THE PEOPLE, Respondent, v. VERNELL FRANKLIN, Appellant.

Kenneth Foley, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Robert R. Granucci, Deputy Attorneys General, for Respondent.

TOBRINER, J.—This is an appeal from a judgment of conviction of second degree burglary and forgery and from a purported order denying new trial, although the record discloses no motion for new trial and no order of the court as to it. Appellant urges three alleged points of error: first, misconduct on the part of the district attorney; second, erroneous admission of evidence regarding independent wrongful acts and independent crimes; and, third, error in failing to instruct the jury that, as a matter of law, two of the prosecution's witnesses participated in the crime as accomplices. We shall point out that as to the first, although the prosecution exceeded the bounds of proper inquiry, the defense failed to check this aggression by objection; the errors did not work prejudice. A similar failure to avail himself of procedural protections disposes of appellant's second point. As to the third contention, the evidence sustains the court in rejecting the instruction that the witnesses were accomplices in the crime.

We confine our review of the facts to those that touch the problems above mentioned since no question arises as to the sufficiency of the evidence to sustain the convictions.

A burglary occurred on November 8, 1958, at the Christian & Porter Aluminum Company's office at Fourth and Jones Streets in Berkeley. The missing articles included a typewriter, about 200 blank checks representing a discontinued bank account on which the firm name was printed, a check protector, some rubber stamps with the firm's name carrying an old address, and a sport coat. The information charged appellant with the perpetration of this burglary; another count accused him of forgery in that "he fraudulently made, forged and counterfeited" a Christian & Porter check in the amount of $75.19, which, knowing its falsity, he passed; a remaining count asserted the kidnapping of one Edward Polland on November 3, 1958. The information likewise charged some ten prior convictions to appellant.

We state briefly the substance of the testimony of the two principal prosecution witnesses and appellant. The first of these, Polland, testified that during the second quarter of 1958 he heard appellant and others conversing about checks at appellant's house; that before November 1958, appellant once approached him and asked him to cash some checks, but that Polland said he "didn't want any parts of it." Then, on November 3, 1958, there occurred the incident which formed the basis for the kidnapping charge against appellant, a charge upon which he was acquitted. Polland testified that appellant and five other men forced him out of his car and into another car, drove him to Tilden Park, and, because he refused to cash checks for them "hit" and "kicked" him, and, only upon his agreement of compliance, did they drive him back to his car. Between November 3d and November 8th Polland cashed a "couple of checks."

Five days later, on November 8th, when Polland was out walking at about 8:30 p.m., appellant and a friend, Robert DeClaybrook, picked up Polland, and DeClaybrook asked him if he wanted "to go for a ride out to Berkeley." Polland acquiesced, and en route appellant said "he had to make some," meaning that he had to "get some" checks. Thereupon Polland said " ' I don't want any parts of it and I will get out here.' " Stating that he would be waiting at the corner until they came back, Polland left appellant and DeClaybrook. They returned and again picked him up. Once more Polland suspected the purposes of the two men and again left the car between Fifth and Sixth on Jones Street. Polland then saw appellant "getting out" of the car at Fourth and Jones Streets; he heard breaking glass; he saw appellant open the

door and enter the Christian & Porter building. Appellant then returned to the car carrying ''a brown tweedish sport coat, gabardine topcoat, check protector, small flashlight and a typewriter'' as well as a book form of checks. Polland returned to the car; the three men drove to a friend's house and there appellant started filling out and signing checks belonging to Christian & Porter.

The next day appellant and three other men picked up the witness; appellant endorsed a Christian & Porter check and gave it to the witness who turned it over to a clerk in an Oakland liquor store for a bottle of whiskey and cash. The same parties followed a practically identical procedure at a Berkeley grocery store, where Polland endorsed with a fictitious name a Christian & Porter check in the amount of $75.19. Polland attested that the maker's name on the check appeared to be in appellant's handwriting. It was this check, allegedly signed by appellant and endorsed by Polland which formed the basis of the forgery count. Appellant gave Polland $5 as his cut; Polland asserted that he cashed the check only because of fear of appellant's gang.

We turn to the testimony of DeClaybrook. He stated that during October 1958, appellant and he discussed the matter of passing checks. He testified that on November 8th appellant, Polland and he drove to the vicinity of Christian & Porter; appellant left the car without explaining where he was going; he returned, saying he had been ''in the Christian and Porter place,'' and carrying a sport coat, an overcoat, a typewriter, a check protector, and a book of blank checks. DeClaybrook admitted cashing some Christian & Porter checks for appellant; appellant had signed these checks, using another name as maker, and DeClaybrook had endorsed them. The witness also saw appellant with other checks of other companies.

Although the prosecution, through additional witnesses, offered evidence of other comparable burglaries which occurred approximately when the blank checks had been stolen and forged, none of such witnesses could on cross-examination connect appellant with such burglaries and forgeries.

The prosecution introduced exemplars of appellant's handwriting; it also adduced checks stolen from various establishments which had been executed and passed. According to a handwriting expert the exemplars of appellant's handwriting and the checks forged and passed after the Christian & Porter burglaries indicated similarities. The expert testified

likewise to such similarities in the exemplars and checks involved in the comparable burglaries and forgeries. He concluded that appellant wrote the check which formed the basis of the forgery charge as well as all of the other Christian & Porter checks.

Appellant's own testimony consisted of his denial of any part in the alleged kidnapping, burglary and forgery. Miller, and other witnesses on behalf of appellant, asserted that on November 8th appellant had been engaged in running a poker game at a friend's house.

The jury acquitted appellant of the kidnapping charge; it found him guilty of second degree burglary and forgery.

We turn to a separate consideration of the three issues raised by appellant: the alleged misconduct of the district attorney, the alleged error of the court in the admission of evidence of other crimes and acts allegedly perpetrated by appellant both before and after the dates charged in the information, and the alleged error of the court in instructing the jury that it should determine as a matter of fact whether or not the witnesses Polland and DeClaybrook were accomplices.

We shall point out that appellant's first endeavor, to the effect that the district attorney's cross-examination of appellant and his alibi witness, Miller, constituted prejudicial misconduct, may in certain instances disclose misconduct but it does not prove prejudice. We shall show, too, that cross-examination of appellant exceeded the scope of the direct-examination; it elicited testimony of questionable admissibility but it clearly did not contribute that crucial essence which makes the difference between a verdict of guilt and innocence; the overwhelming evidence of guilt foreclosed any such possibility.

Turning to Miller's testimony, we do not believe the attacked cross-examination worked error. The prosecution sought to discredit both the alibi testimony that appellant did not leave Miller's home during the week end of the burglary, as well as the denial of the alleged kidnapping and the beating of Polland on November 3, 1958. The attempted impeachment included questions which implied that Miller had previously related to the police a story which incriminated appellant; these insinuations found support in the testimony of two officers. To prove Miller's bias toward appellant the prosecution adduced from the witness the fact that his common-law wife was appellant's ex-girl friend. We

find no error in these attempts of the prosecution to show Miller's prejudice and to impeach him.

■ As to appellant, the reach of the cross-examination went further and, in certain instances, too far. After establishing the bare facts of appellant's 10 prior convictions, the prosecution asked appellant the details concerning several of them, remarked on, and read from, a previous confession, and asked appellant how much money he made from passing the bad checks involved in a prior conviction. The district attorney further sought to establish appellant's relationship with individuals involved in other cases of passing bad checks; he questioned appellant concerning several acquaintances, and coincidentally revealed by the form of his questions that those individuals had been involved in other such cases of passing bad checks and committing forgeries.

These questions exceeded the bounds of proper cross-examination. Although respondent attempts to justify them upon the ground that the crimes exhibited a common pattern, we do not find that they present a sufficient similar design. Respondent argues that since appellant in the prior cases had used ''a number of different persons to cash checks for him,'' the prosecution in the instant matter could ''attempt to connect him with a number of persons who had been arrested for having attempted to cash the forged checks from this establishment.'' The forger's use of other persons to cash falsified checks is too slim a thread with which to weave a common design; the cashing of checks by other persons is so frequent an occurrence that it portrays no special or repetitive pattern, and if it were enough to let in proof of other crimes, it would admit such evidence in almost every such forgery case.

■ Although the course of the prosecution's conduct produced error, we cannot hold the questions or responsive testimony prejudicial; the defense itself interposed but few objections. We do not, however, condone such overzealous action of respondent. (See *People* v. *Wirth* (1960), 186 Cal.App.2d 68, 72-78 [8 Cal.Rptr. 823]; *People* v. *Talle* (1952), 111 Cal.App.2d 650, 677-679 [245 P.2d 633]; *People* v. *Ramsey* (1959), 172 Cal.App.2d 266, 274-275 [342 P.2d 287]; *People* v. *Edgar* (1917), 34 Cal.App. 459 [167 P. 891].)

■ The role of the prosecution far transcends the objective of high scores of conviction; its function is rather to serve as a public instrument of inquiry and, pursuant to the

tenets of the decisions, to expose the facts. To the extent that the prosecution departs from these purposes we believe that it creates unnecessary difficulties in the administration of justice. ██ As we said in *People* v. *Wirth, supra,* 186 Cal.App.2d 68: "We hope, however, that our refusal to reverse will not be taken by the district attorney as a license to repeat such excesses. He, like us, and like the court below, has a duty to perform, and it is his responsibility to perform it fairly, and that of the trial court to see that he does so." (P. 78.)

██ Appellant's second charge that the court erred in admitting evidence of other crimes and wrongful acts cannot stand in the face of appellant's similar failure to object to such testimony and his apparent election to permit its introduction in the hope that it would be discredited upon cross-examination.

The subject matter of appellant's complaint on this score consists of the admission of evidence in five instances: (1) testimony of other similar burglaries, (2) testimony of appellant's alleged burglary and theft of Polland's clothes, (3) evidence of two other alleged kidnappings of Polland which were not connected with any participation of appellant, (4) the introduction into evidence, as a handwriting exemplar and as proof of a similar offense, of the written confession of appellant of a prior crime, and (5) the prosecution attempt to admit into evidence checks selected from the police files involved in other unsolved check forgeries.

The proceedings at the trial dispel the charges in each instance. As to the first and second, appellant entered no objections; indeed, in one instance he stipulated that the evidence be admitted, and, in two other instances, developed on cross-examination that nothing tied appellant into the claimed burglaries. As to the third, appellant elicited by cross-examination of Polland that his alleged kidnappers had not mentioned appellant by name; in any event, the jury did not believe Polland in this respect since they acquitted appellant of the kidnapping charge. As to the fourth, the introduction of the confession, appellant registered no objection to the manner of its use. When the prosecution first offered the confession appellant stated he "did not have any objection to it going into evidence" for the purpose of its use as an exemplar but would object to its introduction "in its entirety as a confession of any other similar offense." Later, upon the district attorney's motion to have it read,

appellant stated "I will withdraw my objection to the confession being read." The court accordingly ruled it was introduced "for all purposes that were indicated by counsel for the People. . . ." Counsel offered no objection; we can hardly hold that appellant did not waive any objection. As to the fifth, the prosecution's attempt to connect appellant with unsolved forgery cases did not succeed. The court did not admit the offered checks except for identification, stating that they were immaterial; indeed, those exhibits were never admitted into evidence.

In essence appellant's appellate counsel complains because appellant's trial counsel conducted the case in a manner different from that in which he would have handled it. Such a complaint cannot form the basis for reversal; appellant had the benefit of trial counsel.

Appellant finally contends that the record compels the conclusion as a matter of law that the prosecution witnesses, Polland and DeClaybrook, were accomplices of appellant, and that, therefore, the court should not have instructed the jury to decide whether or not they participated in the crimes. While appellant submits a thorough and elaborate review of the factual components of this issue, the subject matter remains a factual one, and we cannot hold that the trial court should have resolved it as a matter of law.

The key to the role of an accomplice in participation in a crime lies in his volitional common intent to unite with the principal offender in its perpetration. The cases have defined an accomplice as one who "must knowingly, voluntarily, and with common intent unite with the principal offender in the commission of the crime." (*People* v. *Lamb* (1955), 134 Cal.App.2d 582, 585 [285 P.2d 941]; *People* v. *Platnick* (1958), 161 Cal.App.2d 313, 319-320 [326 P.2d 585]; *People* v. *Freytas* (1958), 157 Cal.App.2d 706, 715 [321 P.2d 782].)

The testimony of Polland and DeClaybrook raises questions of fact as to such intent. Referring to the passing of the forged checks, Polland insisted that he did not "want any parts of it"; that he only agreed to pass checks for appellant because he was afraid of appellant's gang; that he did not participate in the burglary and, rather than do so, left the car. Despite the questionable veracity of Polland, he did testify to his unwillingness to commit the crimes. A similar situation developed as to DeClaybrook. He asserted that when he took appellant to Berkeley he did not know

appellant was about to commit the burglary. Hence the court properly left to the determination of the jury the question of whether or not the witnesses acted as accomplices.

In any event, even assuming the court should have instructed the jury that these two witnesses were accomplices as a matter of law, the failure to do so did not work prejudicial error. The prosecution produced both general testimony that the burglary occurred as well as expert testimony that appellant had signed the checks; such testimony sufficiently corroborated that of Polland and DeClaybrook. (*People* v. *Morris* (1953), 115 Cal.App.2d 312, 316 [252 P.2d 36].)

We cannot avoid the conclusion that, despite appellant's main and meritorious point that the prosecution in certain instances exceeded its prerogatives, appellant failed, with few exceptions, to use the protective procedures at his disposal. In any event, the admission of the allegedly objectionable testimony could not, in our opinion, have resulted in a different decision; no real doubt could befog this judgment; the guilt of appellant is unfortunately all too clear.

We affirm the judgment and dismiss the appeal from the purported order denying a motion for new trial.

Bray, P. J., and Duniway, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 13, 1961.