[Crim. No. 4792.   Third Dist.   Apr. 4, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. HURON
FIELDS, Defendant and Appellant.

Ronald E. Moe, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, James T. McNally and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—Defendant was convicted after a trial by jury of burglary (Pen. Code, § 459), rape by use of threats (Pen. Code, § 261, subd. 4), and oral copulation (Pen. Code, § 288a). He appeals from the judgment.

In the early morning hours of January 28, 1967, Mrs. Alicia Martin was awakened by a man standing over her shaking her shoulders to "wake up." Mrs. Martin was able to view the man's face for approximately 30 seconds from a distance of three feet before the man blindfolded her with a lady's stocking, tied her hands behind her back and removed her sleep robe. This view was facilitated by illumination from a street lamp outside her bedroom window. Prior to this the man had pressed a kitchen knife against Mrs. Martin's throat and threatened her life if she didn't do what he asked. Mrs. Martin acknowledged that she understood his intentions. The man then committed the acts of which he stands convicted.

During all this time the man was very talkative, and Mrs. Martin listened closely and stated that she "knew if I heard the voice again I would be able to identify it." Also, after the first act of intercourse the man agreed to untie her hands, being convinced by Mrs. Martin that she feared for the safety of her three small children. During the subsequent physical contact she could feel recessed blackheads on the upper portion of his back. She further noted a scent of Jade East cologne.

Mrs. Loretta Schooler, the victim's sister, arrived at the apartment at 7 a.m. Mrs. Martin's children told her that a man had just run through the house. She proceeded into the bedroom and listened to Mrs. Martin's account of what had occurred. She then went outside, looked around and saw a "kid" crouching in the bushes approximately 150 feet away. Mrs. Schooler had no doubt that the person she saw was the defendant. Loretta Schooler positively identified the defendant at a police lineup of six persons.

Defendant contends prejudicial error was committed by the trial court in allowing the prosecutor to cross-examine

a defense witness beyond the scope of the evidence over defense objections, and in failing to admonish the jury to disregard prosecutor's questions where objections were sustained.

Defendant's mother, testifying for the defense, stated that at 7:30 a.m. on the day the crimes were committed defendant was in her home in bed with his girl friend Linda B. and that she could recall the specific date because she marked her calendar for this reason. She admitted that she had talked with District Attorney Rupert on a previous occasion and explained the red pencil marks on her calendar, which began in January and extended for six months. She stated that she told Mr. Rupert that the letters "L.B." between the dates of January 27th and 28th stood for the last date she was supposed to take birth control pills. She also told him that the other red marks on the calendar had reference to dates for taking such pills.

On cross-examination the prosecutor asked how she could recall this particular date. She responded to the effect that it so disturbed her to catch her son in bed with a woman that she marked the date on her calendar. The prosecutor then elicited from her the contents of their previous conversation at her home about the other red pencil marks on her calendar for the month of January. She had told him that the other red marks on the calendar related to the taking of birth control pills.

In view of the fact that the mother was attempting to provide an alibi for her son, there was nothing improper in the prosecution's questions as to how she remembered that particular day and the subsequent questions regarding the marks on the calendar. The cross-examination was not on collateral matters having no relevance to the issues in the case.

▮ Defendant contends that he was inadequately represented by counsel since the defense did not call Linda B. as a witness. He maintains that Linda was the key witness who could have substantiated the alibi.

In *In re Beaty* (1966) 64 Cal.2d 760, 764 [51 Cal.Rptr. 521, 414 P.2d 817], the court states: "To justify relief on the ground that counsel was inadequate, it must appear that the trial was reduced to a farce or sham through the attorney's lack of competence, diligence, or knowledge of law. [Citation.] If a crucial defense is withdrawn from the case through the failure of counsel to investigate carefully all defenses of fact and law, the defendant has not received adequate representation. [Citation.]"

No such failure appears here, however, for the defense of alibi was not withdrawn. To the contrary, three defense witnesses were called to establish an alibi. It is a matter of speculation as to how this witness would have testified and the defendant has the burden of establishing inadequacy, not as a matter of speculation but as a demonstrable reality. (*People v. Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]; see also *People v. Garrison* (1966) 246 Cal.App.2d 343, 350-351 [54 Cal.Rptr. 731].) In any event, a failure to call certain witnesses is not grounds for an inadequacy claim. (*People v. Carreras* (1963) 216 Cal.App.2d 807, 810 [31 Cal. Rptr. 436].)

■ Defendant contends that testimony concerning the lineup identifications of defendant at the police station was improperly admitted since the record fails to show that he was represented by counsel at the time as now required by *United States v. Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert v. California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]. Defendant urges this court to grant limited retroactivity to the rule of those cases, maintaining that they apply to all cases *tried* after June 12, 1967, the date of those decisions.

However, the rule in *Wade* and *Gilbert* is not applicable here, for in *Stovall v. Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967], the court ruled: "We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date."

This decision has been interpreted to mean that the *Wade-Gilbert* rule affects only *lineups* held after those decisons, not trials held thereafter. (*People v. Feggans* (1967) 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]; *People v. Harris* (1967) 67 Cal.2d 866, 872 [64 Cal.Rptr. 313, 434 P.2d 609].) The lineups in the instant case preceded the date of *Wade* by three months, and therefore these rules are inapplicable.

■ Finally, defendant urges it was prejudicial error for the trial court to admit testimony of the victim's identification of defendant made through a two-way mirror in violation of the rights protected by the Fourteenth Amendment.

*Stovall, supra,* requires the appellate court to scrutinize the record with respect to the showup to determine whether a defendant was denied due process by the part the showup played in his conviction. (*Stovall v. Denno, supra,* 18 L.Ed.2d at pp. 1202, 1206; *People v. Feggans, supra,* 67 Cal.2d at pp.

448-449.) In other words, was the confrontation conducted so unnecessarily suggestive and conducive to irreparable mistaken identification that defendant was denied due process of law. ''This is a recognized ground of attack upon a conviction independent of any right to counsel claim.'' (*Stovall* v. *Denno, supra,* 18 L.Ed.2d at p. 1206.)

In the instant case the victim did not identify the defendant via the two-way mirror until after she had positively identified the defendant from photographs shown to her by the police. Under these circumstances, and with the prior information the officers had concerning the use of Jade East cologne by defendant and the blackheads on his back, by which the victim further identified him, the view of defendant singly was not improper. (Cf. *People* v. *Romero* (1968) 263 Cal.App.2d 590, 593 [69 Cal.Rptr. 748]; *People* v. *Smith* (1968) 263 Cal.App.2d 631, 636 [69 Cal.Rptr. 670].) The identification cannot reasonably be said to be an attempt to circumvent the present restrictions on lineups.

Moreover, even if evidence of this single view was improper, any error in the admissions of the victim's showup identification was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824].)

The judgment is affirmed.

Pierce, P. J., and Bray, J.,* concurred.

---

* *Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.