[No. B069812. Second Dist., Div. Six. Dec. 7, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES WILLIAM HERRING, Defendant and Appellant.

1068

**COUNSEL**

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Mitchell Keiter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE (S. J.), P. J.**—James William Herring appeals from a judgment following conviction by jury that he committed assault with intent to commit rape (Pen. Code,[1] § 220), attempted rape (§§ 664/261, subd. (a)(2)), and sexual battery (§ 243.4), and the trial court's finding that he had suffered a prior conviction for first degree burglary, a serious felony within the meaning of section 667, subdivision (a). The trial court sentenced him to prison for seven years.

He contends, among other matters, that the trial court committed reversible error in allowing the testimony of a psychologist regarding the victim's mental retardation, and that the prosecutor's remarks during final argument impugned the integrity of defense counsel and viciously attacked appellant's character, thereby constituting misconduct requiring reversal.

We agree that reversal is required due to prosecutorial misconduct. It is, therefore, unnecessary to discuss the other matters raised with the exception of the issue of expert testimony which may occur on retrial.

### FACTS

Celia M. and appellant had known each other since 1987 when she and her parents lived across the street from him in Santa Barbara, California. Appellant's brother Anthony, at age 16, fathered Celia's son. In April 1989, Celia and her children moved to Lompoc. Appellant moved in with her for the summer because he needed a place to stay. Celia did not see him from the time he moved out until October 1991 when they met in Lompoc. He asked whether he could come to visit his nephew Anthony and she assented.

On November 13, 1991, appellant came to Celia's house unannounced to see his nephew. He played with Anthony until the boy fell asleep and then visited for a while with Celia in the living room. When he was about to leave, he asked her for a hug. As they hugged in the hallway by the front door, he began kissing her on the mouth. She pushed him away but he continued to kiss her. He pushed her against the wall and pulled down her

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

pants and disregarded her pleas to stop. He put his finger in her vagina and attempted to put his penis in her.

Celia continued to ask him to stop, saying that it was not fair to her boyfriend and her son. Appellant stopped and asked if she was all right. When she said she was, he asked if he could come back. She said he could if he behaved. Celia went to a friend's apartment and told her what had occurred. Celia called the police and was taken for a sexual assault examination. Celia told the examining nurse that appellant had penetrated her with his finger but had not ejaculated inside or on her body. Examination of a sanitary napkin she was wearing showed a semen stain, slightly contaminated by blood. Analysis of the seminal fluid showed a type "A" secretor. Appellant is a type "A" secretor as is one of every three people in the population.

Defense witnesses said Celia told them she was "raped" and that appellant had put his penis inside of her. Appellant's stepfather recalled that Celia had called several times for appellant in October and November 1991. Appellant's mother testified Celia had confided to her previously that her boyfriend David had physically abused her when he was angry. David was in jail at the time of the instant offense and Celia called the jail in an attempt to tell him that she was "raped."

Appellant testified that he and Celia lived together in the summer of 1989, shared the same bed, and had a sexual relationship. After moving from her home, he was incarcerated for a period in which Celia visited him in jail and wrote him letters expressing her love for him. He said that on the evening of November 13, 1991, they engaged in an act of consensual sexual intercourse and that after he ejaculated, she told him to stop because it was not fair to her boyfriend and child. He ceased their sexual activity and left.

Celia admitted that she had had sexual intercourse with appellant during the time he had lived with her, but that she did not enjoy it and did not consider it a "relationship."

## DISCUSSION

### 1. *Admission of Expert Testimony Not an Abuse of Discretion.*

Appellant asserts that the court committed reversible error in allowing Doctor Powers, a psychologist, to testify regarding the victim's mental retardation. Doctor Powers was called by the prosecutor to give his opinion of Celia following his administering intelligence tests to her. He opined that Celia was in the borderline range of mental retardation.

Evidence Code section 780 provides that in determining the credibility of a witness, the trier of fact may consider any matter that has any tendency in reason to prove or disprove the truthfulness of the witness's testimony, including, but not limited to, demeanor while testifying, and the extent of his or her capacity to perceive, recollect or communicate. (*People* v. *Cooks* (1983) 141 Cal.App.3d 224, 302 [190 Cal.Rptr. 211].)

■ A witness may be cross-examined about her mental condition or emotional stability to the extent it may affect her powers of perception, memory or recollection, or communication. (*People* v. *Cooks, supra,* 141 Cal.App.3d at p. 302.) "[E]xpert psychiatric testimony may be admissible to impeach the credibility of a prosecution witness where the witness' mental or emotional condition may affect the ability of the witness to tell the truth." (*Ibid.*) The trial court has broad discretion in this area, although generally, attempts to impeach a prosecution witness by expert psychiatric testimony have been rejected except in certain sex offense cases. (*Ibid.*; see also *People* v. *Alcala* (1992) 4 Cal.4th 742, 781-782 [15 Cal.Rptr.2d 432, 842 P.2d 1192].)[2]

■ Respondent asserts that this evidence would have been available to rehabilitate the victim since her difficulty in answering questions could otherwise have been attributed to evasion or mendacity. Appellant correctly responds that evidence to rehabilitate was premature (*People* v. *Andrews* (1970) 14 Cal.App.3d 40, 45 [92 Cal.Rptr. 49]) and that appellant was not prosecuted under the section which alleges sexual intercourse with a person incapable of giving legal consent due to unsound mind or incapacity. (See, e.g., *People* v. *Dolly* (1966) 239 Cal.App.2d 143 [48 Cal.Rptr. 478]; *People* v. *Lewis* (1977) 75 Cal.App.3d 513 [142 Cal.Rptr. 218].) Nonetheless, the court did not abuse its discretion. The victim's ability to perceive and recollect were still at issue. The prosecutor still had to prove lack of consent. ■ " '[L]egal consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences.' " (*People* v. *Lewis, supra,* at p. 519.)

■ Opinion evidence by an expert witness is admissible if it is related to a subject sufficiently beyond common experience that the expert's opinion would assist the trier of fact. (Evid. Code, § 801, subd. (a).) The jury need not be totally ignorant of the subject matter of the opinion to justify its admission. (*People* v. *McAlpin* (1991) 53 Cal.3d 1289, 1299-1300 [283 Cal.Rptr. 382, 812 P.2d 563].) Such expert testimony will be excluded

---

[2]Section 1112 provides that the trial court shall not order any prosecuting witness, complaining witness, or any other witness, or victim in any sexual assault prosecution to submit to a psychiatric or psychological examination for the purposes of assessing credibility.

" '. . . only when it would add nothing at all to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness." . . .' " (*Ibid.*)

■ Doctor Powers did not testify that Celia's testimony should be taken as truthful or untruthful, and in fact, said that her borderline retardation did not make her any more or less truthful. Although appellant asserts it was error to allow this evidence in the prosecution's case-in-chief, the evidence was similar to expert psychological testimony often introduced to rebut defense allegations on the victim's credibility in child molestation cases. (See *People* v. *Housley* (1992) 6 Cal.App.4th 947, 956 [8 Cal.Rptr.2d 431].) This type of testimony has been allowed in the prosecution's case-in-chief to explain prior statements to a witness or to the authorities. (*Ibid.*)

The prosecutor did not have to wait to see if the defense would try to capitalize on Celia's halting responses and inconsistencies to explain that she was, indeed, mentally a child and her responses should be considered with that knowledge if the jury believed the expert witness.

Appellant has failed to show a manifest abuse of discretion in the trial court's admission of Doctor Powers's testimony. (*People* v. *Roberts* (1992) 2 Cal.4th 271, 298 [6 Cal.Rptr.2d 276, 826 P.2d 274]; *People* v. *McAlpin*, *supra*, 53 Cal.3d 1289, 1299.)

2. *Prosecutorial Misconduct Requires Reversal.*

■ Appellant asserts that the prosecutor engaged in prejudicial misconduct in final argument to the jury. The prosecutor commented that defense counsel "and I aren't any different in a couple of respects. I chose this side and he chose that side. My people are victims. His people are rapists, murderers, robbers, child molesters. He has to tell them what to say. He has to help them plan a defense. He does not want you to hear the truth." He later stated: "He [defense counsel] continues this copout too. He says, hey, look my is [*sic*] client testifying you ought to believe him. He says this was purely consent, but if you don't believe him, if you don't think it was consent then certainly you have a reason to believe he thinks it was consent. The attorney has a lot of faith in his own client if you don't believe consent then believe he thought he had consent."

Appellant also asserts that the prosecutor's most vicious attacks were against him personally. "He [appellant] wants to have sex with her again. I mean this is primal man in his most basic level. He's [*sic*] idea of being

loved is sex. He wouldn't know what love was. He's like a dog in heat. . . ." "This is primal man. He thinks all I have to do is put a little force on her. Women love this. Every man knows that. . . ." "He's like a parasite. He never works. He stays at people's homes. Drives people's cars. He steals from his own parents to get anything. He won't work for it."

Appellant objected to the prosecutor's statement that he (the prosecutor) did not obtain the answers he sought from the victim because he had not talked to her previously, inferring presumably that he had not coached her. The court sustained the objection that there was "no evidence" and admonished the jury to disregard all remarks and that the only evidence the jury could consider is that derived from witnesses' testimony or what is marked and received in evidence. Appellant asserts that this admonition was insufficient to cure the harm from all the prosecutor's remarks. We agree.

■ Generally, a defendant cannot complain on appeal of the prosecutor's misconduct at trial unless he timely objected and requested that the jury be admonished to disregard the impropriety. (*People* v. *Fierro* (1991) 1 Cal.4th 173, 207 [3 Cal.Rptr.2d 426, 821 P.2d 1302].) Any misconduct is waived unless an admonition would not have cured the harm. (*People* v. *Miller* (1990) 50 Cal.3d 954, 996 [269 Cal.Rptr. 492, 790 P.2d 1289]; *People* v. *Edelbacher* (1989) 47 Cal.3d 983, 1030 [254 Cal.Rptr. 586, 766 P.2d 1].) To determine whether an admonishment would have been effective, we consider the statements in context. (*People* v. *Edelbacher*, *supra*, at p. 1030.) If the defendant objected or if an objection would not have cured the harm, we look to see whether the improper conduct was prejudicial, i.e., whether it is reasonably probable that a jury would have reached a more favorable result absent the objectionable comments. (*People* v. *Haskett* (1982) 30 Cal.3d 841, 866 [180 Cal.Rptr. 640, 640 P.2d 776].)

■ We conclude that further admonition would not have cured the harm. The prosecutor's "primal man in his most basic level" and "[t]his is primal man" statements about a biracial defendant are, at the very least, in bad taste. ■ A prosecutor may argue vigorously and include opprobrious epithets and forceful language when warranted by the evidence. (*People* v. *Pinholster* (1992) 1 Cal.4th 865, 949 [4 Cal.Rptr.2d 765, 824 P.2d 571]; *People* v. *Edelbacher*, *supra*, 47 Cal.3d 983, 1030.) ■ Nonetheless, although the crimes alleged were serious and we do not minimize them, the evidence did not reveal undue violence or infliction of injury. Additionally, his further comments, i.e., that appellant is "like a parasite . . . never works . . . stays at people's homes . . . [d]rives people's cars . . . steals from his own parents to get anything . . . won't work for it," had nothing to do with the crimes alleged and inferred that people who do not work, live with

others, and drive other people's cars are bad people and more likely to do criminal acts. This argument directed at appellant's character invited the jury to decide the case based upon its own value judgment and not on the law.

Nonetheless, these statements by themselves and absent timely and specific objection would not be cause for reversal since a timely admonition likely would have cured the harm. However, we must weigh the cumulative effect of the improper statements that pervaded the prosecutor's closing argument. (See *People v. Bell* (1989) 49 Cal.3d 502, 533-534 [262 Cal.Rptr. 1, 778 P.2d 129]; *People v. Harris* (1989) 47 Cal.3d 1047, 1083-1084 [255 Cal.Rptr. 352, 767 P.2d 619], disapproved on other grounds in *People v. Wheeler* (1992) 4 Cal.4th 284, 299, fn. 10 [14 Cal.Rptr.2d 418, 841 P.2d 938].) When the prosecutor made his "primal man" remarks, defense counsel responded in argument that the prosecutor was making a racist argument. The prosecutor then countered in closing argument that he was not a racist and described the difference in the prosecutor's position and that of defense counsel.

The prosecutor's comments, i.e, "[m]y people are victims. His people are rapists, murderers, robbers, child molesters. He has to tell them what to say. He has to help them plan a defense. He does not want you to hear the truth," were clearly improper and misconduct. His argument inferred that all those accused of crimes whom defense counsel represented are necessarily guilty of heinous crimes. Additionally, he impliedly denigrated the presumption of innocence and the requirement that guilt be proved beyond a reasonable doubt. More egregious, he inferred that defense counsel suborned perjury. ■ It is improper for the prosecutor to imply that defense counsel has fabricated evidence or to otherwise malign defense counsel's character. (*People v. Thompson* (1988) 45 Cal.3d 86, 112 [246 Cal.Rptr. 245, 753 P.2d 37]; *People v. Bain* (1971) 5 Cal.3d 839, 847 [97 Cal.Rptr. 684, 489 P.2d 564].)

■ The prosecutor's uncalled for aspersions on defense counsel's character and integrity directed the jury's attention to irrelevant matters and were not proper comments on the evidence or inferences to be drawn therefrom. (*People v. Thompson, supra*, 45 Cal.3d 86, 112.) Additionally, the prosecutor's argument that defense counsel did not believe his own client was improper. (*Ibid.*) First of all, whether appellant's counsel believed appellant's testimony is irrelevant. Second, the prosecutor's argument about defense counsel's lack of faith in his own client and appellant's asserted defense of consent could have led the jury to confusion about the defense of consent and a reasonable and good faith belief that there was voluntary consent. (See *People v. Davenport* (1985) 41 Cal.3d 247, 280 [221 Cal.Rptr.

794, 710 P.2d 861], where combination of arguments and instructions could have misled jury.)[3]

▮ The role of a prosecutor is to see that those accused of crime are afforded a fair trial and " '. . . far transcends the objective of high scores of conviction . . . .' " (*People* v. *Andrews, supra,* 14 Cal.App.3d 40, 48.) A prosecutor is held to a standard higher than that imposed on other attorneys because he or she exercises the sovereign powers of the state. (*People* v. *Espinoza* (1992) 3 Cal.4th 806, 820 [12 Cal.Rptr.2d 682, 838 P.2d 204].) "Prosecutors who engage in rude or intemperate behavior, even in response to provocation by opposing counsel, greatly demean the office they hold and the People in whose name they serve." (*Ibid.*) Personal attacks on the integrity of opposing counsel constitute prosecutorial misconduct. (*Ibid.*; *People* v. *Bell, supra,* 49 Cal.3d 502, 538.)

▮ " 'As the representative of the government a public prosecutor is not only obligated to fight earnestly and vigorously to convict the guilty, but also to uphold the orderly administration of justice as a servant and representative of the law. Hence, a prosecutor's duty is more comprehensive than a simple obligation to press for conviction. As the court said in *Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, [1321] 55 S.Ct. 629]: "[The Prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." [Citations.]' " (*People* v. *Daggett* (1990) 225 Cal.App.3d 751, 759 [275 Cal.Rptr. 287].)

▮ The prosecutor's argument that he represented the victims and defense counsel has to tell his rapists, murderers, robbers and child molesters what to say and "does not want you to hear the truth" implied that the prosecutor knew facts not in evidence. This argument amounted to unsworn

---

[3]The prosecutor argued, "He [defense counsel] continues this copout too. He says, hey, look my is [*sic*] client testifying you ought to believe him. He says this was purely consent, but if you don't believe him, if you don't think it was consent then certainly you have a reason to believe he thinks it was consent. The attorney has a lot of faith in his own client if you don't believe consent then believe he thought he had consent."

testimony violative of appellant's Sixth Amendment right to confrontation and to his right to effective counsel. (*Boulas* v. *Superior Court* (1986) 188 Cal.App.3d 422, 430 [233 Cal.Rptr. 487].) ▪▪ Since the misconduct involved federal constitutional error, the burden is on the prosecution to prove beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*People* v. *Bolton* (1979) 23 Cal.3d 208, 214 [152 Cal.Rptr. 141, 589 P.2d 396], citing *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) ▪▪ The prosecutor cannot meet this burden here. Indeed, even under the lesser standard of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], our decision would have to be the same.

Here, the prosecutor's remarks went to the heart of the defense. The issue was one of credibility. The prosecutor's comments accused defense counsel of fabricating a defense, implied that appellant lied on instructions from his counsel, and asserted that defense counsel did not believe his own client. Similar arguments have been misconduct. (See *People* v. *Bain*, *supra*, 5 Cal.3d 839, 847-849; *People* v. *Bell*, *supra*, 49 Cal.3d 502, 537-538.) The jury's inability to reach a verdict on the most serious offense and its questions to the court illustrate how crucial the issue of credibility was. Consequently, we cannot hold that admonishments would have cured the harm. It is unnecessary to discuss other issues raised which may not recur upon retrial.

Prosecutors must be aware that by engaging in improper prejudicial rhetoric they jeopardize what might otherwise be fairly won convictions. When, as here, prosecutors trample on the rights of the accused and cause the need for a new trial, the law-abiding citizen has cause for outrage. Victims must then be subjected to the humiliation of testifying again. The taxpayer must bear the. expense of a new trial. There is danger that the evidence may weaken with time, and a guilty person may escape punishment and put the public at new risk.

The judgment is reversed.

Gilbert, J., and Yegan, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 17, 1994.