[No. B085297. Second Dist., Div. Six. Dec. 9, 1994.]

ROBERT LEE MORROW, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Kenneth I. Clayman, Public Defender, Christina L. Briles and Bryant Villagran, Deputy Public Defenders, for Petitioner.

Glen Mowrer, Public Defender (Santa Barbara), Michael C. McMahon, Assistant Public Defender, and Mary L. Fielder, Deputy Public Defender, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Michael D. Bradbury, District Attorney, and Kevin G. Denoce, Deputy District Attorney, for Real Party in Interest.

## OPINION

YEGAN, J.—It has been said, and it is doubtless true, that the ". . . courtroom is a temple of justice." (*Featherstone* v. *United States* (5th Cir. 1974) 491 F.2d 96, 97, fn. 1.) A prosecutor may not use the courtroom as a place to intentionally and surreptitiously listen to, i.e., eavesdrop upon, a defendant's conversation with his attorney. Indeed, eavesdropping on an attorney-client conversation is inappropriate anywhere and cannot be tolerated.

"[T]he prosecutor is not only the defendant's adversary, but is also the '. . . guardian of the defendant's constitutional rights. . . .' [Citation.]" (*People* v. *Sherrick* (1993) 19 Cal.App.4th 657, 660 [24 Cal.Rptr.2d 25].) These rights include the right to remain silent and the right to counsel. Exercise of these rights necessarily embraces the attorney-client privilege. (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 600 [208 Cal.Rptr. 886, 691 P.2d 642].) "[I]f an accused is to derive the full benefits of his right to counsel, he must have the assurance of confidentiality and privacy of communication with his attorney." (*Barber* v. *Municipal Court* (1979) 24 Cal.3d 742, 751 [157 Cal.Rptr. 658, 598 P.2d 818].) The intentional breach of the prosecutor's duty is the antithesis of his or her obligation.

Where the prosecutor uses the courtroom as a place to eavesdrop upon privileged attorney-client communications, which results in the acquisition of confidential information, the conscience of the court is shocked and dismissal is the appropriate remedy. The sanction is severe but, as we shall explain, it pales when compared to the conduct which compels this court to so hold.

### The Eavesdropping[1]

Robert Lee Morrow (hereafter petitioner) is charged with residential burglary. (Pen. Code, §§ 459, 460, subd. (a).) He was arrested therefor on September 14, 1993. Since that date he has been unable to post bail and has remained in custody.

On the day trial was to commence, the assigned deputy district attorney (hereafter the prosecutor) met with petitioner's deputy public defender in court. The prosecutor opined that petitioner had no defense because an alibi witness had recanted. The prosecutor told the deputy public defender that she intended to go on a skiing vacation in a few days and would have to cancel her plans should the case go to trial. The prosecutor said she wanted either a guilty plea or a waiver of time and continuance. The deputy public defender said she would discuss the matter with her client and went into the courtroom holding area to speak with petitioner.

The door to the holding area was slightly ajar. A bailiff was seated nearby and another criminal matter was being heard by the court. The prosecutor told her investigator to sit next to the holding cell and listen to the conversation between defense counsel and petitioner. The bailiff, a 24-year veteran of the Ventura County Sheriff's Department with 14 years' experience as a bailiff, testified that the investigator ". . . appear[ed] to be listening in on the conversation that was going on . . . in the vicinity of five minutes or so." At the conclusion of the conversation, the investigator walked back to the prosecutor and whispered something to her.

Petitioner did not stipulate to a continuance. The trial court granted, over his objection, the prosecutor's motion to continue the case.

### The Investigations

The next day, the bailiff, who had observed what he considered to be eavesdropping, told the judge what had occurred and prepared a crime

[1]At common law, eavesdropping was considered a nuisance (*Berger* v. *New York* (1967) 388 U.S. 41, 45 [18 L.Ed.2d 1040, 1044, 87 S.Ct. 1873]) and punishable as a misdemeanor. (Black's Law Dict. (5th ed.) p. 459, col. 1.)

report. The Ventura County District Attorney conducted an internal investigation and removed the prosecutor and the investigator from the case.

The Attorney General also commenced an investigation. On March 7, 1994, a report was prepared by Dennis Flood, a special agent with the Attorney General's office. It stated as follows: The investigator refused to offer any explanation of her conduct or disclose what she overheard. The prosecutor, in the presence of her counsel, spoke to Flood. She said that she had heard a loud male voice coming from the holding cell and that she feared for the public defender's safety. Her ". . . sole purpose for sending . . . [the investigator] over to the holding cell area was one of safety . . . ." She claimed further that because the bailiff appeared to be inattentive, she told the investigator to find out what was happening. The prosecutor said she had a very strong case and did not send the investigator over to the holding cell for the purpose of gathering information. The investigator told her that petitioner was not going to agree to a continuance. Flood asked the prosecutor why the investigator had not discussed the issue of the deputy public defender's safety. The prosecutor did not answer.

The prosecutor offered an inconsistent explanation to the Ventura County District Attorney. In a report dated January 29, 1994, the prosecutor told an agent for the district attorney that her "intent in requesting . . . [the investigator to] reposition herself was merely so that . . . [the investigator] could hear if Morrow made any statement about continuing the trial date until the following Tuesday to accommodate her scheduled ski trip."

In a report dated March 18, 1994, the investigator told an agent for the district attorney that she only heard petitioner tell his attorney that he would not agree to a continuance and that the alibi witness's recantation was untruthful.

The Attorney General filed criminal charges against the prosecutor and the investigator for eavesdropping upon a conversation between an in-custody defendant and his or her attorney. (Pen. Code, § 636.)

The prosecutor and the investigator successfully demurred to the information. The charges were dismissed on the grounds that section 636 was ambiguous and only applied to electronic interceptions of private conversations. The Attorney General did not appeal therefrom.

### The Motion to Dismiss

Petitioner moved to dismiss because of prosecutorial misconduct. Attached to the motion were redacted copies of the investigative reports that

had been prepared by the Ventura County District Attorney and by the Attorney General. The hearsay explanations of the prosecutor and the investigator were offered to prove misconduct. It was the only evidence available to petitioner.

Petitioner called the prosecutor and the investigator as witnesses at the hearing on the motion to dismiss. They exercised the right to remain silent and refused to answer questions claiming the privilege against self-incrimination. The privilege was sustained.[2]

The prosecution did not dispute any of the material facts relied upon by petitioner. It took the position that dismissal was inappropriate because petitioner had not proven prejudice by the misconduct. (See *United States* v. *Morrison* (1981) 449 U.S. 361, 365 [66 L.Ed.2d 564, 569, 101 S.Ct. 665]; *People* v. *Zapien* (1993) 4 Cal.4th 929, 967 [17 Cal.Rptr.2d 122, 846 P.2d 704]; *People* v. *Benally* (1989) 208 Cal.App.3d 900, 908-911 [256 Cal.Rptr. 483].) Respondent court repeatedly denied petitioner's requests to reveal, in camera, the content of the conversation that was overheard by the investigator.

The deputy public defender made a lengthy argument as to why the case should be dismissed. Two passages are particularly insightful: "The conduct in Boulas [*Boulas* v. *Superior Court* (1986) 188 Cal.App.3d 422 (233 Cal.Rptr. 487) is outrageous, but in my mind it certainly is not as outrageous as the conduct in Mr. Morrow's case where we were in the sanctity of the courtroom where everyone in this country expects to be the one place that justice is meted out, and yet what we have is a prosecutor directing her investigator to violate the defendant's most sacred right of having a private consultation with his attorney. . . . [¶] I think it's upsetting to every client of every public defender and every criminal defense attorney in this county to think that you cannot have a confidential interview or conversation with your attorney in this building in a custody holding area and believe that that's going to stay confidential and that the courts are going to allow a prosecutor to direct, deliberately have her investigator go and listen in to that conversation, go back and communicate it and that that's okay, no harm, no foul, this is an in-custody client, so what."

The prosecution's argument focused on a claimed lack of prejudice. It also argued ". . . that the issue of [the prosecutor's] intent is not part of the court's determination with respect to a motion to dismiss. It's just simply not relevant."

---

[2]Ironically, the prosecutor and the investigator obtained refuge under the same constitutional umbrella that should have protected petitioner from their conduct.

### *Respondent Court's Ruling*

On June 10, 1994, respondent court denied the motion to dismiss. Relying on *People* v. *Benally, supra,* 208 Cal.App.3d 900, 908-911, it ruled that dismissal was inappropriate because petitioner had not been prejudiced. It found that the eavesdropping had occurred and that confidential matters were discussed. However, respondent court found that there was no evidence that the investigator overheard any essential or strategic information. Respondent court said that the investigator only heard that petitioner refused to have the matter continued and that the alibi witness had lied.

### *Presumption of Prejudice and Burden of Proof*

■ "Where . . . [as here] the state has engaged in misconduct, the burden falls upon the People to prove, by a preponderance of the evidence, that sanctions are not warranted because the defendant was not prejudiced by the misconduct. [Citations.]" (*People* v. *Zapien, supra,* 4 Cal.4th 929, 967; see also *Nix* v. *Williams* (1984) 467 U.S. 431, 444 [81 L.Ed.2d 377, 387, 104 S.Ct. 2501]; *People* v. *Herring* (1993) 20 Cal.App.4th 1066, 1077 [25 Cal.Rptr.2d 213].) Although not expressly so stated in *Zapien, supra,* the People also have the burden to show that there was no substantial threat of demonstrable prejudice. (See, *post,* pp. 1260-1261.) ■ Here the People did not meet that burden. Based upon the evidence presented or rather, the lack of it, respondent court could not have made a reliable finding as to what the investigator overheard.

First, the investigator refused to testify. Her extrajudicial explanation for her conduct and what she overheard were self-serving and conclusory. Second, the prosecutor gave conflicting hearsay accounts of the incident and refused to testify. Third, respondent court repeatedly refused to listen to what the deputy public defender wanted to reveal in camera.

Perhaps respondent court refused to conduct the in camera proceeding so that petitioner's rights would not be again violated. (*Barber* v. *Municipal Court, supra,* 24 Cal.3d 742, 758.) However, the state was not compelling disclosure. That was petitioner's election. In our view, it was unreasonable for respondent court to rule on the motion without listening to petitioner's offer of proof. (*Ibid.*) On the issue of demonstrable prejudice or substantial threat thereof, this was a one-sided evidentiary hearing. The side that was presented hardly inspires confidence. Where a prosecutor orchestrates courtroom eavesdropping on a privileged attorney-client communication and the witnesses thereto invoke the privilege against self-incrimination, the prosecution may not successfully oppose a motion to dismiss on the ground that no prejudice has been shown.

## Constitutional Provisions

The Fifth Amendment to the United States Constitution, in pertinent part, provides: "No person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ."

The Sixth Amendment to the United States Constitution, in pertinent part, provides: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence."

The Fourteenth Amendment, section 1, to the United States Constitution, in pertinent part, provides that no state shall ". . . deprive any person of life, liberty, or property, without due process of law . . . ."

The California Constitution, article I, section 1, in pertinent part, provides: "All people are by nature free and independent and have inalienable rights. Among these are . . . privacy." (See *White* v. *Davis* (1975) 13 Cal.3d 757, 773-776 [120 Cal.Rptr. 94, 533 P.2d 222].)

The California Constitution, article I, section 7, in pertinent part, provides: "(a) A person may not be deprived of life, liberty, or property without due process of law . . . ."

The California Constitution, article I, section 15, in pertinent part, provides: "The defendant in a criminal cause has the right to . . . have the assistance of counsel for the defendant's defense, . . . [and] [¶] may not . . . be compelled in a criminal cause to be a witness against . . . [himself or herself], or be deprived of life, liberty, or property without due process of law."

Here, the prosecutor's and investigator's actions violated each of these constitutional provisions (*Barber* v. *Municipal Court, supra,* 24 Cal.3d 742, 750-751; *Boulas* v. *Superior Court* (1986) 188 Cal.App.3d 422, 429-432 [23 Cal.Rptr. 487].)

## Outrageous Conduct

■ The power of a court to dismiss a criminal case for outrageous conduct arises from the due process clause of the United States Constitution. (*Rochin* v. *California* (1952) 342 U.S. 165, 168 [96 L.Ed. 183, 188, 72 S.Ct. 205, 25 A.L.R.2d 1396]; *People* v. *McIntire* (1979) 23 Cal.3d 742, 748, fn. 1 [153 Cal.Rptr. 237, 591 P.2d 527]; *People* v. *Wesley* (1990) 224 Cal.App.3d

1130, 1141-1142 [274 Cal.Rptr. 326].) "When conduct on the part of authorities is so outrageous as to interfere with an accused's right of due process of law, proceedings against the accused are thereby rendered improper. [Citations.]" (*Boulas* v. *Superior Court, supra,* 188 Cal.App.3d at p. 429.)

The prosecution erroneously narrows the issue to a violation of the Sixth Amendment and then seizes upon the rule, promulgated by the United States Supreme Court: "[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." (*United States* v. *Morrison,* 449 U.S. 361, 365 [66 L.Ed.2d 564, 569], fn. omitted.) The California Supreme Court has recognized and applied this rule. (*People* v. *Zapien, supra,* 4 Cal.4th at p. 967.)

### Morrison and Zapien

In *United States* v. *Morrison, supra,* 449 U.S. 361, two agents from the drug enforcement agency contacted the defendant who had been indicted and had retained counsel. They disparaged counsel, sought defendant's help in a related investigation, and told her that she would benefit if she cooperated and would be sentenced harshly if she did not. (*Id.,* at p. 362 [66 L.Ed.2d at p. 566].) The United States Supreme Court analyzed the case solely in terms of the Sixth Amendment and concluded that the misconduct did not warrant dismissal.

In *People* v. *Zapien, supra,* 4 Cal.4th 929, a prosecutor inadvertently found a tape recording of defense counsel's perceptions and strategy notes in a pending death penalty case. The prosecutor told his investigator to listen to it. The investigator refused to do so and destroyed the tape. (*Id.,* at pp. 961-962.) The defendant sought dismissal arguing that the "defense camp" had been invaded. (*Barber* v. *Municipal Court, supra,* 24 Cal.3d 742, 756.) Citing *United States* v. *Morrison, supra,* 449 U.S. 361, the California Supreme Court held that the misconduct did not prejudice the defense. (4 Cal.4th at p. 968.)

 Here the conduct is far more egregious than that in *Morrison* and *Zapien.* The eavesdropping occurred inside a courtroom and was orchestrated by the prosecutor, an officer of the court. This was not just a simple violation of the Sixth Amendment by a peace officer in the field. Other federal constitutional provisions were violated. (*Ante,* pp. 1258-1259.) California constitutional provisions were also violated. (*Ante,* pp. 1258-1259; see *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 351-356 [276 Cal.Rptr. 326,

801 P.2d 1077]; *People* v. *Cahill* (1993) 5 Cal.4th 478, 558 [20 Cal.Rptr.2d 582, 853 P.2d 1037], dis. opn. of Kennard, J.)

■ Where, as here, the prosecutor orchestrates an eavesdropping upon a privileged attorney-client communication in the courtroom and acquires confidential information, the court's conscience is shocked and dismissal is the appropriate remedy. Even when the issue is narrowed to a Sixth Amendment violation, dismissal is still appropriate because here there is a "substantial threat of demonstrable prejudice" as a matter of law. (*United States* v. *Morrison, supra,* 449 U.S. at p. 365 [66 L.Ed.2d at p. 589].)[3]

### The Temple of Justice

Unlike prior cases, here the misconduct took place within the hallowed confines of the courtroom where the rule of law and fairness should be revered. "So far as I know, the courthouse is the only place on earth where the vicious and the virtuous may contend upon perfectly equal terms, receive the same patient and impartial hearing, and have their respective dues, whatever they may be, meted out in the decision. It is this characteristic, more than any other, which entitles the courthouse to be called a temple of justice." (*Gilham & Brown* v. *Wells* (1879) 64 Ga. 192, 194 [Shapiro, Oxford Dict. of American Legal Quotations (1993) p. 230, col. 2].)

Our justice system will crumble should those, in whose hands are entrusted its preservation and sanctity, betray its fundamental values and principles. Attorneys are obliged by oath to give due respect to the court and to its officers. (Bus. & Prof. Code, § 6068, subd. (b).) They have a duty to support the Constitution and the laws of the United States and California. (Bus. & Prof. Code, § 6068, subd. (a).) It is a crime to utilize deceit or collusion with the intent to deceive any party. (Bus. & Prof. Code, § 6128, subd. (a).) Attorneys may not ". . . mislead the judge or any judicial officer by an artifice or false statement of fact or law." (Bus. & Prof. Code, § 6068, subd. (d).)

■ It is also true today, as it was 100 years ago, that an attorney " '. . . owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court—a minister in the temple of justice. His high vocation is to correctly inform the court upon the law and the facts of the case, and to aid it in doing justice and arriving at correct conclusions. He violates his oath of office when he resorts

---

[3]We can, of course, envision the situation where a prosecutor or peace officer seated at counsel table inadvertently overhears a defendant conferring with his or her attorney. Our holding would not apply in this situation.

to deception or permits his clients to do so." (*People* ex rel. *Attorney General v. Beattie* (1891) 137 Ill. 553, 574 [27 N.E. 1096, 1103].)

## The Prosecutor's Function

Courts expect even higher ethical standards from prosecutors. (E.g., *People* v. *Herring, supra,* 20 Cal.App.4th at p. 1077; *Boulas* v. *Superior Court, supra,* 188 Cal.App.3d at p. 432.) This is ". . . because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the State. [Citation.]" (*People* v. *Espinoza* (1992) 3 Cal.4th 806, 820 [12 Cal.Rptr.2d 682, 838 P.2d 204].) "Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a law-breaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy." (*Olmstead* v. *United States* (1928) 277 U.S. 438, 485 [72 L.Ed. 944, 960, 48 S.Ct. 564, 66 A.L.R. 376] (dis. opn. of Brandeis, J.) .) "Law enforcement agents are entrusted with awesome power. But with that power also comes a responsibility to guard against its abuse, a responsibility that the government in this case has abdicated. Were we to tolerate the government's conduct in this case, we would participate in that abuse." (*U.S.* v. *Solario* (9th Cir. 1994) 37 F.3d 454, 461.)

■ Among these high standards is the requirement that the prosecutor not ". . . act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." (*Maine* v. *Moulton* (1985) 474 U.S. 159, 171 [88 L.Ed.2d 481, 493, 106 S.Ct. 477].) While district attorneys are expected to prosecute their cases with considerable vigor and dispatch, they "may strike hard blows, [but are] not at liberty to strike foul ones." (*Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629]; *People* v. *Daggett* (1990) 225 Cal.App.3d 751, 759 [275 Cal.Rptr. 287].) By conspiring to violate petitioner's constitutional rights, the prosecutor struck a foul blow.

## Alternative Remedies

■ The prosecution contends that we should not punish the people of the State of California, its client, because of the conduct of its attorney. It claims that a civil lawsuit, presumably a cause of action based on 42 United States Code section 1983, and disciplinary proceedings by the California State Bar, are sufficient remedies. To be sure, these remedies are available but here miss the mark. We, ourselves, have warned prosecutors in the past. (See, e.g., *People* v. *Herring, supra,* 20 Cal.App.4th 1066, 1077; *People* v. *Daggett, supra,* 225 Cal.App.3d 751, 757-759; *Boulas* v. *Superior Court,*

*supra*, 188 Cal.App.3d 422, 435.) Yet some prosecutors do not seem to be listening. This court has an obligation to support and defend the United States and California Constitutions. Vindication of constitutional rights should not be dependent upon filing a civil rights lawsuit or upon the State Bar instituting disciplinary proceedings.

Here the trial court found that confidential matters were discussed and overheard. In this situation, the harm is apparent and the substantial threat of demonstrable prejudice is inherent. There must be an ". . . incentive for state agents to refrain from such violations." (*Barber* v. *Municipal Court, supra*, 24 Cal.3d 742, 759.) The instant violation is not a "no harm no foul" situation. Past cases recognize that per se dismissal may be appropriate under certain circumstances. (*People* v. *Benally, supra*, 208 Cal.App.3d at p. 910, collecting the cases.)[4]

### Conclusion

We would be remiss in our oaths of office were we to discount or trivialize what occurred here. (*Rochin* v. *California, supra*, 342 U.S. 165, 169 [96 L.Ed. 183, 188].) The judiciary should not tolerate conduct that strikes at the heart of the Constitution, due process of law, and basic fairness. What has happened here must not happen again. The prosecutor ". . . used methods that offend 'a sense of justice.' " (*Id.*, at p. 173 [96 L.Ed. at p. 190].) This is conduct which ". . . shocks the conscience." (*Id.*, at p. 172 [96 L.Ed. at p. 190].)

Let a writ of mandate issue directing respondent superior court to set aside its order dated June 10, 1994, denying petitioner's motion to dismiss, and to enter a new order granting said motion.

Stone (S. J.), P. J., and Gilbert, J., concurred.

On January 5, 1995, the opinion was modified to read as printed above.

---

[4]Cases of outrageous conduct and the appropriate sanctions therefore are sui generis. Each case must be decided on its own facts.

In ordering dismissal, we have considered the nature of the crime charged, the fact that petitioner has been incarcerated for approximately one year awaiting trial, the harassment that he has endured at the hands of the prosecutor and her investigator, and the burdens that he may confront were we to permit the case to proceed to trial. If we were to allow the prosecution to continue and conviction resulted, petitioner and his attorney might justifiably believe that, to some extent, the conviction was obtained by using the fruits of the eavesdropping. (Cf. *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 504 [72 Cal.Rptr. 330, 446 P.2d 138].)