[No. B140721. Second Dist., Div. Six. Aug. 14, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN CHAVEZ LEON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].]

[black redaction bars]

## COUNSEL

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, David C. Cook and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—The trial court permits the prosecution to call as its witness defendant's Spanish interpreter. The interpreter testifies she saw defendant commit an ambiguous act at counsel table which arguably could be incriminating. Here we conclude that admission of such evidence is prejudicial error.

Juan Chavez Leon appeals the judgment following his conviction of committing a forcible lewd act upon a child (Pen. Code,[1] § 288, subd. (b)(1), count 1), with a finding that he committed the offense during a residential burglary with intent to commit said lewd act (§ 667.61, subds. (a) & (d)(4)); residential burglary (§ 459, count 2); false imprisonment by violence (§ 236, count 3); and dissuading a witness from making an arrest (§ 136.1, subd. (b)(3), count 4). We conclude that the court committed prejudicial error by admitting testimony from Leon's interpreter that she saw him moving his hands over his groin while the child testified.[[/]]* We affirm the judgment on counts 1, 3 and 4. We reverse the finding under section 667.61, subdivisions (a) and (d)(4), and the conviction on count 2 (residential burglary).

### FACTS

Yomayra, a 12-year-old girl, was home alone on a school day because she had an ear infection. Leon, the gardener, knocked on the door and asked her

---

[1]All statutory references are to the Penal Code unless otherwise stated.

*See footnote, *ante*, page 812.

if her mother had left a check for him on the stereo. She said, "[L]et me look. Can you please wait outside." She closed the door, leaving an opening of about an inch.

While Yomayra was looking for the check in the kitchen, Leon entered the house, closed the front door, and locked it. Then he went to the sliding glass door and locked it. He stated, "I found the check." As Yomayra entered the living room, he grabbed her and pushed her into the sofa and said, "It's not gonna hurt." He got on top of her, pulled his pants down, and pulled her pants and panties down. He attempted to insert his penis in her vagina, but she fought him off. He ejaculated on her thigh and clothes.

Yomayra screamed, pushed Leon off her, and ran to the door. He grabbed her by her hair, dragged her to the living room, and threw her on the couch. He gave her $10 and said, "Don't tell nobody."

During the trial, Rebecca Rubenstein, a court interpreter employed by the County of Ventura, interpreted for Leon and sat next to him at the defense table. She saw him opening and closing his fingers over the crotch area of his pants and reported this to the bailiff during a recess. The prosecutor, who was at her table near the bailiff's desk, overheard the statement, but did not mention it to defense counsel because she did not intend to use it. The next day she notified defense counsel that she decided to call Rubenstein as a witness.

The trial court denied Leon's motion to exclude Rubenstein's testimony, pursuant to Evidence Code section 352. It stated, "the act committed, if it be an act, is subject to interpretation and argument by counsel, and the nature of the charge itself is grievous enough that I don't think that this creates undue prejudice." Rubenstein testified that Leon had his hands on his lap when Yomayra was testifying. He was opening and closing his fingers. Rubenstein did not know if he was touching his penis and did not see an erection. Leon never opened his pants.

The prosecutor told the jury, Leon "is so turned on by the mere sight of [Yomayra] in court that he's masturbating." After the guilty verdicts, Leon moved for a new trial based on prosecutorial misconduct. In denying the motion the court stated, "the fact that the district attorney was present when [Rubenstein] did it . . . is unfortunate from the standpoint of your client. But I don't think that was the intent of the interpreter . . . . When she was told that she might have to testify, she was furious."

## DISCUSSION

### I. *Exclusion Under Evidence Code Section 352*

■ Leon contends the trial court erred by not excluding Rubenstein's testimony under Evidence Code section 352. He argues that the undue prejudice caused by Rubenstein's testimony outweighed any probative value. The trial court assumed that, because the charged offenses were so serious, Rubenstein's evidence would not be prejudicial. Instead, the opposite is the case. The court was obligated to decide whether the probative value of this evidence was outweighed by its prejudicial impact. (*People v. Leonard* (1983) 34 Cal.3d 183, 188 [193 Cal.Rptr. 171, 666 P.2d 28].) The court did not weigh those factors.

Moreover, the prosecution did not show how Leon's actions in court were relevant to his intent when he entered the house. The court could not articulate what act Leon did, or whether it was an act. Rubenstein testified that Leon had his hands on his lap when Yomayra was testifying. He was opening and closing his fingers over his groin area. But Rubenstein did not know if he was touching his penis and did not see an erection. Leon never opened his pants. The court told the jury that, "There was no evidence that [Leon] touched his penis."

Because the evidence was so ambiguous, it likely confused the jury. Because it was unclear what Leon did with his hands, the probative value, at best, was weak. The court's ruling that counsel could argue their interpretation of Leon's actions to the jury opened Pandora's box.

The prosecution told the jury that Leon was masturbating in the courtroom while Yomayra was testifying. "He's so turned on by the mere sight of her in court that he's masturbating." This was inflammatory argument in a child molestation case. One juror wrote a note suggesting that Leon be deported. The risk was high that jurors would focus more on Leon's conduct in court than on the elements of the charged offenses.

Casting Rubenstein as a witness against Leon might lead jurors to conclude she was an integral part of the defense team whose members thought Leon was guilty. (*People v. Alvarez* (1996) 14 Cal.4th 155, 239 [58 Cal.Rptr.2d 385, 926 P.2d 365].) Compelling Rubenstein to testify to conduct that may have been innocuous, or at best, could possibly lead to an inference of criminality lightened the prosecution's burden to establish Leon's intent at the time he entered the premises. The prejudicial impact of testimony is increased where it confuses the issues or inflames the jury.

(*People v. Falsetta* (1999) 21 Cal.4th 903, 916 [89 Cal.Rptr.2d 847, 986 P.2d 182].) The admission of this testimony did both.

We conclude and Leon concedes that the evidence of lewd conduct, dissuading a witness, and false imprisonment was so substantial that error in the admission of Rubenstein's testimony was harmless on those counts. But he contends that the admission of her testimony on the burglary and the section 667.61 enhancement was unduly prejudicial. We agree.

For the section 667.61 enhancement to apply, the jury must find that Leon entered Yomayra's home with the intent to commit a forcible lewd act on her. (§§ 288, subd. (b)(1), 667.61, subds. (a) & (d)(4).) Leon contends that he did not enter the house with such intent; he only went in to look for his check, and his actions inside were spontaneous.

The evidence involving his intent at the time of entry is largely circumstantial. Lourdes P., Yomayra's mother, testified that Leon's check was due on the 12th day of the month. Leon came to the house on the 14th. Ms. P. testified that Leon normally came to the house to pick up his check. There was nothing unusual about Leon asking Yomayra to find it because he had previously done that. Yomayra testified Leon was not wearing gloves and from another room she heard him lock the front and sliding glass doors. A police fingerprint expert, however, testified he could not find Leon's prints on those areas. Yomayra also testified that shortly before the attack she heard Leon digging inside papers as if he were looking for something. This was consistent with Leon's position he did not form the intent to commit the crime until after he entered the house to look for his check. Moreover, no evidence suggests that Leon knew Yomayra would be home.

The prosecution used Leon's conduct in court as a critical link to establish his intent to attack Yomayra before he entered the house. The prosecution characterized an ambiguous act at defense table as a crime and told the jury, "he's so turned on by the mere sight of her even in a courtroom that, when she opened up that door, you know what he was thinking, you know what . . . his intent was." The emotional impact of that statement would overshadow a rational discussion in Leon's favor.

Rubenstein's testimony presented a powerful picture. Jurors could conclude Leon's defense team collapsed because they thought he was guilty. The trial court reasoned that the interpreter's testimony was not unduly prejudicial because the offenses were so serious. This rationale for admitting the testimony was the very reason for not admitting it.

## II. *The Prosecution Did Not "Invade the Defense Team"*

■ Leon contends the prosecution secretly obtained damaging information from Rubenstein and withheld it from his counsel. The trial court denied his motion for a mistrial.

A prosecutor's deliberate attempt to obtain confidential information from the defense is an invasion of the "defense camp." (*Morrow v. Superior Court* (1994) 30 Cal.App.4th 1252, 1259-1261 [36 Cal.Rptr.2d 210] [prosecutor sent investigator to eavesdrop on defendant's conversation with his counsel].) Such prosecutorial misconduct compromises the defendant's right to a fair trial and may justify dismissal of the case. (*Id.* at p. 1263.) But, as we stated in *Morrow*, "We can, of course, envision the situation where a prosecutor . . . seated at counsel table inadvertently overhears a defendant conferring with his or her attorney. Our holding would not apply in this situation." (*Id.* at p. 1261, fn. 3.) That is what we have here. When Rubenstein made the remark to the bailiff, the prosecutor was at her table near the bailiff's desk. She overheard the statement in the courtroom, where she had a right to be. Here, unlike *Morrow*, there was no attempt to obtain information from the defense.

### [[III. *CALJIC No. 17.41.1*]]*

The judgment on counts 1, 3 and 4 is affirmed; in all other respects it is reversed.

Yegan, J., and Coffee, J., concurred.

A petition for a rehearing was denied September 6, 2001, and the opinion was modified to read as printed above.

---

*See footnote, *ante*, page 812.