Filed 4/25/14  P. v. Jimenez CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>OBDULIO AMBROSIO JIMENEZ,<br><br>　　　Defendant and Appellant. | A136579<br><br>(Alameda County<br>Super. Ct. No. CH50143) |

## I. INTRODUCTION

Appellant was charged with intercourse or sodomy with a child under 10 years old.  During his first trial, the court recessed overnight while the victim was testifying on direct examination.  The following morning, before the trial resumed, the prosecutor met with the victim to discuss a key issue in her testimony.  The prosecutor did not tell appellant's trial counsel about the meeting.

Appellant's first trial ended in a mistrial, for reasons unrelated to the present appeal.  Before appellant's retrial, his counsel learned the prosecutor had met with the victim during her testimony in the first trial.  Appellant moved to dismiss the charges based on prosecutorial misconduct, but the trial court denied the motion.  Appellant contends the trial court erred in failing to dismiss the original charges on the grounds of prosecutorial misconduct.  We conclude that the mid-testimony meeting between the prosecutor and the victim was not misconduct.

In addition, before appellant's retrial, the prosecution filed an amended information adding charges of forcible lewd act on a child.  At the second trial, the jury

1

convicted appellant on the original charges, but did not return a verdict on the added charges. The prosecutor dismissed the added charges.

Appellant contends that the trial court erred in discharging the jury without requiring it to return a verdict on the additional charges. We reject this contention as well, and affirm appellant's conviction.

## II. FACTS AND PROCEDURAL BACKGROUND

During part of 2008, all of 2009, and part of 2010, appellant lived with the family of his wife's brother. That family had three children: a girl, "Jane,"[1] who was under the age of 10 at all relevant times; her brother A., who was about four years older than Jane; and a daughter five years younger than Jane. During most of the time that appellant lived with the family, he shared a bedroom with the two older children. A. and Jane slept in a bunk bed, with A. on the upper bunk, and Jane on the lower bunk. Appellant occupied a separate bed in the same room.

While appellant shared a bedroom with the children, he repeatedly touched Jane in a sexual manner during the night.[2] A. sometimes woke up and saw appellant in or next to Jane's bed; when this occurred, appellant told A. to be quiet. One night, A. got up to use the bathroom, and as he climbed down the ladder from his bunk, appellant jumped up from where he was crouching over Jane and returned to his own bed. Another night, A. traded beds with Jane, and was awakened by appellant getting into the bottom bunk with him and rubbing his legs and shoulders. Appellant left when A. told him to stop and got out of bed. Appellant told A. not to tell his parents that appellant was getting into Jane's bed, and bribed A. to persuade Jane not to tell their parents about the abuse.

After appellant moved out of the house, Jane told a counselor at her school that appellant had sexually molested her. The counselor referred the matter to the police, and

---

[1] "Jane" was the victim of appellant's crimes. To protect her privacy, she was referred to at the second trial as Jane Doe. In their briefs on this appeal, the parties refer to her as Jane; we will do the same. To protect the privacy of Jane's brother, we refer to him by his first initial only.

[2] The details of Jane's testimony regarding the molestation are discussed *post*, in connection with appellant's prosecutorial misconduct claim.

Jane was interviewed by a police officer, and then by a counselor at an organization that specialized in interviewing victims of suspected child abuse.

Several weeks after the abuse ended, Dr. James Crawford-Jakubiak, an expert on child sexual assault examinations, examined Jane. He did not find evidence of significant injury to Jane's vagina or anus, but in his opinion, such injuries could have healed due to the passage of time, so the lack of such injury was not inconsistent with the possibility that the abuse occurred. Moreover, Dr. Crawford-Jakubiak opined that appellant could have derived sexual gratification by placing his penis between Jane's labia without penetrating her vagina, as is often done by abusers of young girls, in which case no tearing of tissue or significant damage to her vagina would have occurred.

On May 26, 2011, an amended information was filed charging appellant with four counts of intercourse or sodomy with a child under 10 years old, in violation of Penal Code section 288.7, subdivision (a).[3] Appellant's first trial on those charges (the section 288.7 charges) ended in a mistrial for reasons unrelated to this appeal. On May 3, 2012, the prosecution filed a second amended information which included both the original section 288.7 charges, and four additional counts (the section 288 charges) of committing a forcible lewd act on a child under 14. (§ 288, subd. (b)(1).)

At the conclusion of appellant's second trial, the jury returned a verdict of guilty on the section 288.7 charges. It failed to return a verdict on the section 288 charges, and they were dismissed on the prosecution's motion. On August 30, 2012, the trial court sentenced appellant to an indefinite term of 100 years to life in state prison. This timely appeal ensued.

### III. DISCUSSION

### A. Denial of Motion to Dismiss for Prosecutorial Misconduct

### *1. Background*

At the preliminary hearing in this case, Jane testified that the first time appellant touched her in a way she did not like was when he lay on her bed next to her and touched

---

[3] All further statutory references are to the Penal Code unless otherwise stated.

his private to the outside of her private. She also testified that after doing this, appellant undid his zipper and "put his private in my private"; that is, he started by putting his private on the outside of Jane's, and then put it on the inside.

At appellant's first trial, the prosecutor again asked Jane about the first time appellant touched her in a way she did not like. Jane responded that when she was six years old, while she was lying on her back in bed, appellant "put his hand *on* my private" under her underwear, and touched her body with "[h]is private." (Italics added.) The prosecutor followed up by asking Jane where she was when appellant "put his hand *in* [her] private." (Italics added.) Jane then marked some diagrams to show what she meant by her own "private" and appellant's "private." The prosecutor then asked her where appellant's private touched her, and Jane responded, "*In* my private." (Italics added.) When asked to give the details of that incident, Jane said appellant took off her pants and underwear, and "put his private *on* my private." (Italics added.) Both the prosecutor and Jane thereafter used both the term "on my private" and the term "in my private" to describe where appellant put his "private" during this first incident, but the prosecutor used "in my private" more frequently and consistently.

At the end of the court day, the prosecutor had not yet completed her direct examination of Jane. After the court excused the jury for the evening, appellant's trial counsel moved unsuccessfully for a mistrial, for reasons not relevant to this appeal. During the colloquy on the motion, the court commented that appellant's main defense appeared to be the prosecution's failure to prove penetration, based on Jane's repeated use of the expression "on her private" (as opposed to "in her private").

The following morning, as soon as Jane's direct testimony resumed, the prosecutor asked her to mark a diagram to show "where specifically [Jane] felt the poking" when appellant "touch[ed] [Jane's] private area with his private area." Jane marked the diagram to reflect where appellant touched her, indicating the line at the junction of her labia, and then answered in the affirmative to the prosecutor's question whether appellant

4

went "inside that line."[4]  Later in Jane's direct testimony, the prosecutor asked her, "Did you feel [appellant's] private area poke you where you go poo," and Jane responded affirmatively.

During his cross-examination of Jane in the first trial, appellant's trial counsel asked her when was the last time she had talked about the case with the prosecutor.  Jane responded that she had met with the prosecutor in the latter's office before court that very morning, and that the prosecutor had shown her the same diagrams she had marked in court during her direct examination earlier that day.  Jane related that the prosecutor had also asked her during the meeting whether appellant's private went in her private, and had told her where to mark the diagrams.  On redirect, however, Jane clarified (after considerable prompting from the prosecutor) that the diagrams were not marked when the prosecutor showed them to her before court that morning.

After a mistrial was declared in the first trial for reasons unrelated to this appeal, appellant moved to dismiss the charges, contending that the prosecutor had coached the witness, and that this constituted outrageous government misconduct.[5]  In opposition, the prosecutor filed a declaration stating that during her morning meeting with Jane before the second day of Jane's testimony, she showed Jane blank diagrams and asked her to point to where she felt poking when appellant was on top of her, and when appellant "put his private in her butt."  The prosecutor denied making any attempt to influence Jane by indicating any particular location where appellant touched her.  The trial court denied the motion to dismiss.  Appellant now contends this was error.

---

[4]  At the second trial, Jane's testimony established penetration more clearly.  She illustrated what appellant did to her through a demonstration in which she inserted about one-third of the length of a pen, representing appellant's "private," into a slit between two pieces of plastic covering the opening of a box of tissues.  She did a similar demonstration with a pen and a doll.

[5]  In the same motion, appellant also sought to disqualify the prosecutor on the ground that she might be called as a witness.  That motion was mooted when the case was reassigned, prior to the second trial, to a different prosecuting attorney.

## 2. Prosecutorial Misconduct

As respondent acknowledges, when prosecutorial misconduct "infects the trial with such unfairness as to make the conviction a denial of due process," the due process clause of the federal Constitution requires reversal. (*People v. Morales* (2001) 25 Cal.4th 34, 44.) Reversal is also required, under California law, when a prosecutor uses " ' "deceptive or reprehensible methods to attempt to persuade either the court or the jury" ' " (*People v. Espinoza* (1992) 3 Cal.4th 806, 820), or when the government's conduct in connection with a criminal prosecution is " ' "so grossly shocking and so outrageous as to violate the universal sense of justice." ' [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 418, fn. 17.) Examples of prosecutorial misconduct justifying the dismissal of criminal charges or reversal of a conviction include having a prosecution investigator eavesdrop on the defendant's conversations with his counsel in a courtroom holding area (*Morrow v. Superior Court* (1994) 30 Cal.App.4th 1252, 1254-1255); informing a defendant that if he wanted to negotiate a plea bargain, he would have to fire his attorney and get a new lawyer acceptable to the prosecution (*Boulas v. Superior Court* (1986) 188 Cal.App.3d 422, 429-436); and having a law enforcement officer infiltrate confidential conferences between a group of arrested political protestors and their counsel (*Barber v. Municipal Court* (1979) 24 Cal.3d 742, 755-760).

In contrast, it is not inherently improper for a prosecutor to meet with a prosecution witness while the court is in recess during the witness's direct testimony. Witness interviews are an important part of trial preparation, and there is nothing improper about a prosecutor meeting with a crime victim or other government witness to discuss the person's upcoming testimony. (See *People v. Rich* (1988) 45 Cal.3d 1036, 1095 [prosecutor did not commit misconduct by meeting with court-appointed expert during trial and then calling same expert as rebuttal witness]; *People v. Norred* (1952) 110 Cal.App.2d 492, 495-496 [in absence of evidence of coaching, fact that 5-year-old molestation victim identified defendant at trial after having been unable to do so at preliminary hearing did not demonstrate prosecutorial misconduct justifying reversal of conviction]; *U.S. v. Rivera-Hernandez* (1st Cir. 2007) 497 F.3d 71, 80 ["Prosecutors and

6

defense attorneys alike are entitled to prepare their witnesses."]; *U.S. v. Nambo-Barajas* (8th Cir. 2003) 338 F.3d 956, 963 ["Meeting with a witness before trial, by itself, suggests no impropriety."].)

Appellant characterizes the prosecutor's conduct during her mid-trial meeting with Jane as "coaching," but the record does not support this contention. The prosecutor flatly denied having attempted to influence Jane's testimony. This denial is corroborated by the fact that at the preliminary hearing, well before the prosecutor's mid-trial meeting with Jane, Jane testified explicitly that appellant put his private *inside* her private. Thus, Jane's testimony at the first trial about penetration was consistent with testimony she gave long before the prosecutor allegedly coached her.

We also note that the asserted misconduct of which appellant complains was committed during a different trial than the one resulting in appellant's conviction, and by a prosecutor who was not involved in the second trial. By the time of the second trial, appellant's trial counsel was well aware of the facts regarding the former prosecutor's mid-testimony meeting with Jane, and made use of those facts in cross-examining Jane to cast doubt on her credibility. Counsel also commented during his closing argument on the mid-trial meeting between Jane and the former prosecutor. Thus, unlike many situations in which prosecutorial misconduct is claimed, here the jury was made aware that Jane had met with the former prosecutor during her prior testimony, and was able to take that into account in assessing her credibility.

For all of the foregoing reasons, we are not persuaded that anything about the conduct of the prosecutor at appellant's first trial warrants the reversal of the convictions resulting from his second trial.

### B. Dismissal of Jury After Partial Verdict

### *1. Background*

The parties agreed that the section 288 charges were not lesser included offenses of the section 288.7 charges. The jury instructions and verdict forms did not include anything that was likely to have misled the jury on that issue. Rather, the jury was instructed that each count charged was a separate crime, and should be considered and

7

decided separately. Nonetheless, when the jury at the second trial announced that it had reached a verdict, this was not actually the case; the jury had not reached a verdict on the section 288 charges, and the verdict forms for those charges remained blank.

When the jury returned to the courtroom with its verdict, the trial court instructed the clerk to read the verdict and poll the jury, which proved to be unanimous. The judge then instructed the clerk to record the verdict; explained to the jurors their rights with respect to discussing the case with counsel; thanked the jurors for their service; and dismissed the jury.

Almost immediately after the jurors left the courtroom,[6] appellant's trial counsel moved for a new trial based on the jury's failure to render a verdict on the section 288 charges. The trial judge responded that he assumed the prosecutor would dismiss those charges. The prosecutor immediately moved to do so, and the trial judge granted the motion. Appellant renewed his motion for new trial at the sentencing hearing, but the trial judge again denied it, reasoning that the section 288.7 charges were more serious and more important.

Appellant now argues that his conviction on the section 288.7 charges should be reversed due to the trial court's error in failing to require the jury to complete its deliberations by returning a verdict on the section 288 charges. Respondent argues that there was no error. In the alternative, respondent contends that the *Watson* standard of harmless error applies (*People v. Watson* (1956) 46 Cal.2d 818, 836), and under that standard, any error was harmless.

---

[6] Appellant's opening brief states that his trial counsel "apprised the court" of the problem when "the jurors were just leaving the courtroom" after being discharged. This mischaracterizes the record, which affirmatively shows that by the time appellant's trial counsel first mentioned that the verdict was incomplete, *none* of the jurors remained in the courtroom. At that point, it was too late to remedy the problem by reconvening the jury. (See *People v. Hendricks* (1987) 43 Cal.3d 584, 597-599 [if verdict is incomplete or otherwise irregular, trial court retains jurisdiction to reconvene jury only if jury has not yet left court's control].) Respondent does not argue forfeiture or waiver, however, and in light of our rejection of appellant's argument on the merits, the issue is immaterial.

## 2. Acceptance of Incomplete Verdict

In arguing that his conviction should be reversed based on the trial court's acceptance of an incomplete verdict, appellant also relies on case law, both from California and from other jurisdictions, indicating that a trial court may choose to receive a partial verdict, but that it is preferable to permit the jury to continue to deliberate until a complete verdict is reached. Appellant does not, however, cite any authority for the proposition he seeks to advance here, i.e., that a jury's guilty verdict on some counts of an information, which is supported by substantial evidence,[7] must be *reversed* if the jury failed to return a verdict on the *other* counts. In fact, the California authority bearing on the issue, though neither ample nor directly on point, tends to undermine appellant's position. (See *People v. Rigney* (1961) 55 Cal.2d 236, 246-247 [trial court did not commit error in instructing jury to return its verdict on each count separately]; *People v. Jones* (1969) 274 Cal.App.2d 614, 620-621 [jury's inability to reach verdict on charge of conspiracy to commit robbery did not require reversal of conviction for related charge of aiding and abetting attempted robbery].)

Appellant cites a federal case, *U.S. v. Benedict* (8th Cir. 1996) 95 F.3d 17 (*Benedict*), for the proposition that his conviction should be reversed due to the jury's failure to return a complete verdict. But that decision had nothing to do with the California statute (§ 1164) that appellant claims the trial court violated here by accepting the jury's partial verdict. For that reason alone it is not persuasive. However, even considering *Benedict,* that case is distinguishable from the instant case in a number of important respects.

In *Benedict*, the defendant was charged with four offenses in connection with the burglary of a post office: (1) conspiracy to burglarize a post office; (2) conspiracy to steal post office property; (3) aiding and abetting post office burglary; and (4) aiding and abetting theft of post office property. (95 F.3d at p. 18.) The opinion does not include a

---

**7** Appellant does not argue that his convictions on the section 288.7 charges are not supported by substantial evidence.

9

recitation of the facts underlying the charges, but it is clear from the opinion that they all arose from a single incident.

A few hours after the case was submitted to the jury in *Benedict*, the jurors sent the court a note stating that they were having difficulty differentiating between count 2 and count 4. The court responded that count 2 charged conspiracy to commit larceny, and count 4 charged the larceny itself. Two hours later, the jurors sent a note saying they had reached a verdict on three counts. On the remaining count, the jurors reported that they had moved from a vote of 10-to-2 to one of 11-to-1 within the last half hour, but had not yet achieved unanimity. (95 F.3d at p. 18.)

Defendant requested that the court simply instruct the jury to continue deliberating. Instead, the court directed the jury to return final verdicts on the three counts they had decided, and then continue to deliberate on the fourth. The jury asked to deliberate further, but after doing so for 20 minutes, informed the court there had been no progress. The court then received and recorded as final the jury's partial verdict, which *acquitted* the defendant on the burglary and conspiracy to commit burglary charges (counts 1 and 3), but found him guilty on the substantive theft charge (count 4). The court denied the defendant's motion for a mistrial on the conspiracy to commit theft charge (count 2), and directed the jury to continue deliberating after a three-day weekend recess. (*Benedict*, *supra*, 95 F.3d at pp. 18-19.)

When court reconvened, the defendant renewed his motion for a mistrial on count 2, and argued, alternatively, that the court should resubmit all the counts to the jury for further deliberations, because count 2, which the jury had not yet decided, was "inextricably linked" to count 4, the only count on which the jury had found the defendant guilty. The court rejected these arguments, and instructed the jury to continue deliberating. Less than an hour later, the jurors indicated they were deadlocked on count 2, and the prosecution agreed to dismiss it. (*Benedict*, *supra*, 95 F.3d at p. 19.)

On the defendant's appeal, the Eighth Circuit *rejected* the argument that a federal district court "lacks the legal authority to take a partial verdict in any criminal case involving multiple counts against a single defendant," noting that "all other [federal]

10

circuits to consider the question have approved the practice. [Citations.]" (*Benedict*, *supra*, 95 F.3d at p. 19.) Considering the specific circumstances of the case before it, however, the court held that the trial court had abused its discretion in recording a partial verdict as final, without a declaration of deadlock by the jury, in the absence of a request by either party, over the objections of the defendant, and without first informing the jury that its partial verdict would be recorded as final on the affected counts, or giving the jury the option of continuing to deliberate. (*Id.* at pp. 19-20.)

As an additional reason for its holding, the *Benedict* court characterized it as "particularly troubling that the outstanding charge of conspiracy to commit post office theft was so closely related to the substantive theft offense for which the jury announced a guilty verdict and to which the jury was not permitted to return during the remaining deliberations." (*Benedict*, *supra*, 95 F.3d at p. 20.) Because the two charges were so closely related, the court found it "difficult to imagine that the jury could continue to deliberate on the conspiracy charge without reweighing the evidence with respect to the substantive offense," since "the government's evidence on both counts was virtually the same," and "[t]he jury expressed as much when it asked for clarification between the two charges." (*Ibid.*)

Unlike in *Benedict*, the record here does not reflect any hesitancy on the jury's part to credit the prosecution's evidence. There was no charge on which the jury found appellant not guilty, and no charge as to which the jury reported that it had deliberated unsuccessfully or had reached a deadlock.

In addition, in the present case, the prosecution presented evidence that appellant molested Jane frequently and repeatedly for a period of years. Once again, unlike in *Benedict*, in which the prosecution presented evidence that the defendant committed a single course of conduct which violated four separate criminal statutes, in the present case the prosecution's evidence, if credited, showed that appellant committed numerous, separate acts, each of which could have been found to violate either or both of the same

11

two criminal statutes.[8]  Thus, the jury in the instant case could have deliberated on the section 288 charges *without* reweighing the evidence with respect to the section 288.7 charges.

Finally, in *Benedict*, *supra*, 95 F.3d 17, the trial court affirmatively instructed the jury to return a partial verdict, over the defendant's objection.  Here, the jury's return of an incomplete verdict was its own decision, perhaps the result of an inadvertent error or misunderstanding.  The trial court did not create the situation; it merely decided to accept it, on the basis of its assumption—which proved to be correct—that the prosecution would dismiss the unresolved charges.  For all of the foregoing reasons, *Benedict* does not persuade us that the trial court erred in accepting the jury's partial verdict in the present case.

### 3. Harmless Error

Moreover, even if the trial court erred, any error was harmless.  We agree with respondent that the *Watson* standard applies on this issue.  When, as here, a trial court's error consists exclusively of an asserted violation of California state law, and does not implicate the federal Constitution, review is exclusively under the *Watson* standard.  (See, e.g., *People v. Beltran* (2013) 56 Cal.4th 935, 955.)  " '[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.'  [Citation.]"  (*Ibid.*)

In anticipation of respondent's harmless error argument, appellant's brief contends that "it cannot be said that the jury's findings on the section 288.7 charges would have withstood the jury's scrutiny in further deliberations where the section 288 charges

---

**8** The second amended information pleaded the facts of both the section 288 charges and the section 288.7 charges in very general terms.  It alleged the bare statutory elements of the respective offenses in identical language as to each count, without elaborating further except to allege that each offense occurred between November 1, 2006, and March 28, 2010.  Jane testified that appellant sexually abused her every night during the time period specified in the charges.  She dated her recollections only in general terms, such as where the family was living at the time, or what grade she was in at school.

12

depended on the exact same evidence." Appellant also asserts that because the undecided section 288 charges "were based on the virtually [*sic*] same evidence upon which the state relied to obtain a guilty verdict" on the section 288.7 charges, "it is difficult to imagine that the jury could continue to deliberate [on the undecided charges] without reweighing the evidence" on the counts it had already decided.

We are not persuaded. Because neither the charges nor Jane's testimony were specific as to dates, the jury could have arrived at a guilty verdict on the four section 288.7 violations, and then proceeded to deliberate on whether appellant violated section 288 on *separate occasions* from the section 288.7 violations. Thus, if (as appellant's argument implies) the jury should have been instructed to deliberate further on the section 288 charges, it easily could have done so without revisiting the section 288.7 charges at all.[9] For that reason, even if the trial court erred, appellant has not carried his burden of persuading us there is a reasonable probability that requiring the jury to deliberate on the section 288 charges would have resulted in an outcome more favorable to him.

---

[9] Moreover, the jury had been instructed that each count of the information alleged a separate crime. Thus, it not only reasonably could, but most likely would, have proceeded on the premise that the section 288 charges involved different incidents than the section 288.7 charges.

13

## IV. DISPOSITION

The judgment is affirmed.

 

_____
RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
RIVERA, J.

14